UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DAVID MCNEILL,<br><br>        Petitioner,<br><br>   v.<br><br>INTERNATIONAL BUSINESS MACHINES CORP.,<br><br>        Respondent. | Civil Action No. 22-2378 (JMC) |

## MEMORANDUM OPINION

Petitioner David McNeill asks the Court to vacate an arbitrator's decision dismissing as untimely his wrongful termination claim under the Age Discrimination in Employment Act (ADEA).[1] IBM asks the Court to confirm that same decision. The Court finds no grounds to vacate the arbitrator's decision under the exceptionally deferential standard of review prescribed by the Federal Arbitration Act (FAA). Accordingly, the Court denies McNeill's Motion to Vacate and grants IBM's Motion to Confirm.

**I.      BACKGROUND**

The following facts appear to be undisputed. David McNeill was a long-time employee at IBM. ECF 11-1 at 98. On May 21, 2020, McNeill was informed that he would be laid off as part of a reduction in force. *Id.*; ECF 22 at 4. He was sixty-two years old at the time. ECF 11-1 at 98. Following his termination, McNeill signed a Separation Agreement, through which he accepted a

---

[1] Unless otherwise indicated, the formatting of quoted materials has been modified throughout this opinion, for example, by omitting internal quotation marks and citations, and by incorporating emphases, changes to capitalization, and other bracketed alterations therein. All pincites to documents filed on the docket are to the automatically generated ECF Page ID number that appears at the top of each page.

1

severance payment in exchange for a waiver of certain legal claims. ECF 11-1 at 62. The agreement permitted McNeill to pursue any claims under the ADEA, though he would be obligated to do so via individual arbitration. *Id.* at 63–64. Under the terms of the Agreement, all ADEA claims were subject to the following timing provision:

> To initiate arbitration, you must submit a written demand for arbitration to the IBM Arbitration Coordinator no later than the expiration of the statute of limitations (deadline for filing) that the law prescribes for the claim that you are making or, if the claim is one which must first be brought before a government agency, no later than the deadline for the filing of such a claim. If the demand for arbitration is not submitted in a timely manner, the claim shall be deemed waived. The filing of a charge or complaint with a government agency or the presentation of a concern through the IBM Open Door Program shall not substitute for or extend the time for submitting a demand for arbitration.

*Id.* at 67. The Agreement specified that any written demand for arbitration must be mailed, along with a filing fee, to the IBM Arbitration Coordinator in Armonk, New York. *Id.* at 68. The Parties do not dispute that the Agreement gave McNeill 180 days to demand arbitration of his ADEA claim, mirroring the statutory limitations period in his state. *See* 42 U.S.C. § 2000e-5(e)(l); 29 U.S.C. § 626(d). In IBM's view, the upshot of the Agreement is that McNeill's last day to mail his written demand was November 17, 2020. ECF 22 at 5.

McNeill attempted to pursue arbitration of his ADEA claims. He retained an attorney to represent him in those proceedings, and his attorney electronically filed McNeill's arbitration demand with JAMS, the alternative dispute forum designated by the Agreement, on November 17, 2020. ECF 11-1 at 70–71. However, his attorney did not mail the written demand to IBM until the following day, November 18, 2020.[2] *Id.* at 71. IBM moved to dismiss McNeill's demand as

---

[2] There is some indication in the record that McNeill's attorney may have mailed the demand even later than that, as the Post Office does not appear to have taken possession of the parcel until two days later, on November 20, 2020. ECF 11-1 at 76–77. The Court need not resolve that factual uncertainty here because even assuming that the demand was mailed on November 18, 2020, the Court finds no grounds to vacate the award.

untimely. *Id.* at 73. McNeill opposed that motion, making several arguments: that the filing requirement was non-jurisdictional; that the one-day delay in serving IBM was *de minimis* and warranted an exception to the terms of the Agreement; and that "considerations of fairness" warranted equitable tolling of the statute of limitations. *Id.* at 84. Regarding that last argument, McNeill pointed to the logistical difficulties in mailing the demand during the Covid epidemic and the fact that his attorney was attending his father's funeral the week the demand was due. *Id.* at 108. The arbitrator rejected McNeill's arguments and granted IBM's motion to dismiss on October 14, 2021. *Id.* at 111. The arbitrator denied McNeill's request for reconsideration of that decision on May 6, 2022. *Id.* at 146–47.

After that, McNeill filed a Petition in this Court to vacate the arbitrator's decision dismissing his wrongful termination claim. ECF 10. The case is before the Court on McNeill's Motion to Vacate, ECF 3, and IBM's Cross-Motion to Confirm. ECF 20.[3]

## II.   LEGAL STANDARD

Under the FAA, 9 U.S.C. §§ 1–16, "judicial review of arbitral awards is extremely limited." *Kurke v. Oscar Gruss & Son, Inc.*, 454 F.3d 350, 354 (D.C. Cir. 2006). Section 10 of the FAA provides an exhaustive list of the FAA's "exclusive grounds" for vacating an award. *See Hall St. Assocs. v. Mattel, Inc.*, 552 U.S. 576, 584 (2008). Of the grounds for vacatur that are included on

---

[3] There is one other procedural wrinkle that the Court deals with here. On July 12, 2023, the Court issued requested additional briefing as to whether it should consider the possibility that McNeill's arbitration demand raised both a wrongful termination claim and a failure-to-hire claim based on the events that followed his termination. ECF 38. Both Parties filed Supplemental Briefs in response to that order. ECF 41; ECF 44. Having reviewed those briefs, the Court is convinced that—even if McNeill's initial demand could be read to assert a failure-to-hire claim—the arbitrator reasonably interpreted the demand as making only a single claim for wrongful termination, and (more importantly) McNeill never objected to that interpretation during the proceedings that followed. Accordingly, the Court concludes that McNeill has waived any arguments related to the purportedly overlooked failure-to-hire claim. *See N.Y. Hotel & Motel Trades Council v. Hotel St. George*, 988 F. Supp. 770, 778 (S.D.N.Y. 1997) ("[P]ermitting a party to oppose confirmation of an award based on a claim that it did not raise before the arbitrator would . . . offend the general principle that a party cannot remain silent . . . and when an award adverse to him has been handed down complain of a situation of which he had knowledge from the first."); *see also* ECF 41 at 5–6 (collecting other cases for that proposition). The Court's analysis, therefore, is based entirely on McNeill's wrongful termination claim.

that list, two are relevant here. The first is that a court may vacate an arbitrator's decision based on a finding that "the arbitrators were guilty of misconduct . . . in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced." 9 U.S.C. § 10(a)(3). The second is that a court may vacate a decision where "the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." *Id.* § 10(a)(4).

A court cannot vacate an arbitrator's decision merely because the court disagrees with the result of the arbitration. *See E. Associated Coal Corp. v. United Mine Workers of Am.*, 531 U.S. 57, 62 (2000). Section 10(a)(3), by its plain text, does not authorize a court to second-guess how an arbitrator weighs the evidence, only whether the arbitrator refused to hear it. *See Howard Univ. v. Metro. Campus Police Officer's Union*, 512 F.3d 716, 722 (D.C. Cir. 2008) ("A federal court may vacate an award [under § 10(a)(3)] only if the arbitrator's refusal to hear pertinent and material evidence prejudices the rights of the parties to the arbitration proceedings."). As for § 10(a)(4), in reviewing an arbitral decision under that provision, "the sole question" before the court is "whether the arbitrator (even arguably) interpreted the parties' contract, not whether he got its meaning right or wrong." *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 569 (2013). Put differently, "[i]t is only when the arbitrator strays from interpretation and application of the agreement and effectively dispenses his own brand of industrial justice" that a district court may vacate the decision. *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001).

### III.   ANALYSIS

McNeill argues that the arbitrator's decision should be vacated pursuant to both § 10(a)(3) and § 10(a)(4). ECF 11 at 7, 14; ECF 23 at 5, 12. In the alternative, he argues that the timing requirement in the Separation Agreement should be deemed unenforceable insofar as it waives

4

what is known as the "piggybacking rule," which McNeill contends is a nonwaivable substantive right. ECF 11 at 15–16. The Court considers—and rejects—each argument in turn.

### A. FAA Section 10(a)(3)

McNeill first contends that the Court should vacate the arbitral award under § 10(a)(3) because the arbitrator "fail[ed] to give any consideration to the factual circumstances surrounding [McNeill's] submission of his arbitration demand." ECF 11 at 7. Specifically, McNeill argues that the arbitrator ignored the fact that he "timely file[d] his arbitration demand with JAMS," and that the document was "promptly mailed out to IBM on the following day." *Id.* at 7–8. McNeill also contends that the arbitrator did not consider the following: the difficulties created by the Covid pandemic, *id.* at 8; what McNeill contends was the "prevailing standard for conducting business electronically" at the time, *id.*; or whether the language of the arbitration agreement was ambiguous as to the applicable deadline, *id.* at 13.

Those arguments fail for the simple reason that the arbitrator did in fact consider the evidence regarding all those issues. The arbitrator specifically discussed McNeill's contention that he filed his demand with JAMS before the expiration of the statute of limitations, but concluded that the electronic submission was immaterial because the Agreement expressly required written notice. ECF 11-1 at 106, 109. The arbitrator acknowledged the *de minimis* nature of the delay but—after considering caselaw indicating that courts routinely dismiss ADEA claims that are untimely by even one day—concluded that the short length of the delay did not change the outcome of the case. *Id.* at 110. The arbitrator also considered and rejected the other factors that McNeill contends made the dismissal of his claims unfair, emphasizing that McNeill had nearly six months in which to submit his demand before the deadline, and concluding that none of the circumstances cited by McNeill authorized the arbitrator "to deviate from the clear and mandatory language of the Arbitration Procedures." *Id*. Finally, the arbitrator considered whether the Agreement was

5

ambiguous with regard to the timing question and concluded that it was not. *Id.* at 163. In summary, it is clear from the record that the arbitrator did not "refus[e] to hear evidence pertinent and material to the controversy." § 10(a)(3). Rather, he considered the evidence and reached a decision McNeill disagrees with. The Court is not empowered to vacate an arbitral award based on that kind of disagreement.

### B. FAA Section 10(a)(4)

McNeill next argues that the Court should vacate the arbitrator's decision because it failed to account for the fact that the arbitrator was authorized to "award any party the full remedies that would be available to such party if the [claim] had been filed in a court." ECF 11 at 14. Specifically, McNeill focuses on the doctrine of equitable tolling—to which he feels he was entitled under the circumstances. *Id.* That argument misses the mark as well. The Court agrees with McNeill that, in agreeing to arbitrate his ADEA claims, he did not waive any of the substantive rights afforded to him by that statute. *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985). But even assuming (without deciding) that equitable tolling constitutes a substantive right, McNeill's § 10(a)(4) argument fails because the arbitrator did consider it, ultimately finding that the circumstances cited by McNeill did not "meet the strict standard required" to justify an extension under that doctrine. ECF 11-1 at 165–67. In any event, it is clear to the Court that the arbitrator did not dispense his own brand of "industrial justice" in declining to deviate from the plain language of the Agreement.

### C. Enforceability of the Timing Requirement

Finally, McNeill argues that the Court should declare unenforceable the provision in IBM's arbitration agreement that purports to waive what is known as the "piggybacking" rule. ECF 11 at 15; *see also* ECF 11-1 at 67 ("The filing of a charge or complaint with a government agency . . . shall not substitute for or extend the time for submitting a demand for arbitration."). The

6

piggybacking rule is a judge-made rule that "allows an individual plaintiff, who has not filed an EEOC charge, to satisfy the administrative exhaustion requirements under Title VII by relying on a charge filed by another plaintiff." *Campbell v. Nat'l R.R. Passenger Corp.*, 163 F. Supp. 2d 19, 25 (D.D.C. 2001). In effect, the "piggybacking" rule can allow a plaintiff to bypass filing an administrative complaint and proceed directly to court. As applied to the ADEA, a plaintiff's otherwise non-exhausted civil court filing under 29 U.S.C. § 626(d) would be permissible so long as another similarly situated plaintiff filed with the EEOC before the expiration of the statute of limitations.

According to McNeil, the right to "piggyback" an ADEA claim on a related administrative charge is a substantive right, ECF 11 at 16, and therefore could not have been lawfully waived by the Separation Agreement, at least absent the disclosures required under the Older Workers' Benefits Protection Act (OWBPA), *id.* at 20.[4] McNeill argues that IBM was notified of his claim when a class action lawsuit advancing similar claims was filed on September 17, 2018 (several months before McNeill's 180-day deadline) and thus his demand would have been timely had it been pursued in court. *See* ECF 11 at 15-16, 11 & n.13 (citing *Rusis v. IBM*, No. 18-cv-083434 (S.D.N.Y.)). He also points to a recent Sixth Circuit case that held that the statute of limitations is

---

[4] Other courts, considering similar arguments on similar facts, have found that this argument fails because it does not fall under one of the narrow statutory grounds for vacating an arbitral award. *See Owens v. IBM*, No. 22-cv-901-APM, at *9 (D.D.C. Dec. 9, 2022) (docketed as ECF 30-1); *Smith v. IBM*, No. 21-cv-3856-JPB, 2022 WL 1720140, at *5 (N.D. Ga. May 27, 2022), *aff'd* No. 22-11928 (11th Cir. May 4, 2023) (citing *Hall St. Assocs.*, 552 U.S. at 584) (unpublished, docketed as ECF 35 at 6). The Court does not quibble with that reasoning. However, in this case, the Court notes that the arbitrator expressly declined to rule on the enforceability of the challenged provision, finding that the terms of the Separation Agreement reserved that issue for a court to decide. ECF 11-1 at 179 ("[U]nder the clear terms of the Arbitration Agreement, the Arbitrator does not have authority to adjudicate enforceability of the Arbitration Agreement's limitations provision or piggybacking waiver. Only a court may do so."). Should the Court also decline to consider the issue, it would mean that McNeill never had a viable forum to challenge the enforceability of his contract. That would be not only unjust to McNeill, but circular. Accordingly, the Court will accept the arbitrator's analysis of the Agreement and address the "piggybacking" issue on the merits. The Court is particularly comfortable taking that step here because doing so does not change the disposition of the case; the Court concludes on the merits that the provision is enforceable.

a substantive, nonwaivable right under the ADEA and therefore cannot be shortened by contract. ECF 11 at 18 (citing *Thompson v. Fresh Prods., LLC*, 985 F.3d 509, 521 (6th Cir. 2021)).

That argument fails because the piggybacking rule is not applicable to McNeill's case. That rule does not address the ADEA's statute of limitations; it creates an exception to the administrative exhaustion requirement. *See Owens*, No. 22-cv-901-APM, at *10 (D.D.C. Dec. 9, 2022) (docketed in this case as ECF 30-1); *Chandler v. IBM*, No. 21-cv-6319-JGK, 2022 WL 2473340, at *5 (S.D.N.Y. July 6, 2022), *aff'd* No. 22-1733 (2d. Cir. Aug. 4, 2023) (unpublished, docketed as ECF 43-2). Here, McNeill was not required to exhaust and had the full statutory period to file a demand to pursue his claim. *See* 42 U.S.C. § 2000e-5(e)(l). Nor does the Sixth Circuit's decision in *Thompson* persuade the Court to alter its conclusion on that point. *Thompson* holds that the ADEA's *statute of limitations* reflects a substantive right and therefore cannot be prospectively waived. 985 F.3d at 522. It does not speak to exhaustion, which McNeill's arbitration agreement did not require in any event. *See, e.g.*, *Chandler*, 2022 WL 2473340, at *6 (distinguishing *Thompson* and observing that, "the Timing Provision did not shorten the ADEA statute of limitations by not adopting the piggybacking rule because that rule is an exhaustion doctrine, not an aspect of the ADEA statute of limitations, and the plaintiff in this case was not required to exhaust any administrative remedies").

As for the OWBPA, that statute only requires disclosures for the waiver of substantive rights. *Estle v. IBM*, 23 F.4th 210, 214 (2d Cir. 2022). For the reasons identified above, the piggybacking rule is not applicable here and thus is not a substantive right that McNeill gave up in this context. *See, e.g.*, *Wooten v. IBM*, No. 22-cv-12476, at *12 (E.D. Mich. June 28, 2023) (docketed as ECF 42-1).

The Court is sympathetic to McNeill, but nothing in the Separation Agreement deprived him of a fulsome opportunity to exercise his rights under the ADEA. Indeed, the Court notes that several courts, both in and out of this jurisdiction, have considered similar fact patterns in other cases related to IBM's layoffs in the period between 2016 and 2020. Thus far, those other courts have unanimously confirmed the arbitrators' decisions, finding no grounds for vacatur under Sections 10(a)(3) or (a)(4). *See, e.g.*, *Owens*, No. 22-cv-901-APM, at *5–6; *Holtman v. IBM*, No. 22-cv-852, at *5–6 (D.D.C. Dec. 9, 2022) (docketed as ECF 30-1); *see also Wooten*, No. 22-cv-12476, at *18; *Smith*, 2022 WL 1720140, at *7, *aff'd* No. 22-11928 (11th Cir. May 4, 2023) (unpublished, docketed as ECF 35 at 6); *Chandler*, 2022 WL 2473340, at *7; *Lodi v. IBM*, No. 21-cv-6336-JGK, 2022 WL 2669199, at *5 (S.D.N.Y. July 11, 2022), *aff'd* No. 22-1737 (2d. Cir. Aug. 4, 2023) (unpublished, docketed as ECF 43-3); *In re IBM Arb. Agreement Litig.*, No. 21-cv-6296-JMF, 2022 WL 2752618, at *9 (S.D.N.Y. July 14, 2022), *aff'd* No. 22-1728, 2023 WL 4982010 (2d. Cir. Aug. 4, 2023).

## IV.   CONCLUSION

For the foregoing reasons, Petitioner's Motion to Vacate the Arbitration Award is DENIED. Respondent's Motion to Confirm the Arbitration Award is GRANTED. A final, appealable order accompanies this Memorandum Opinion.

**SO ORDERED.**

DATE: November 2, 2023

                                                  Jia M. Cobb
                                                  U.S. District Court Judge